**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) CRIMINAL NO. _____ <br> ) <br> ) VIOLATIONS: <br> ) <br> ) 50 U.S.C. § 1705 <br> ) (International Emergency <br> ) Economic Powers Act) <br> ) <br> ) 15 C.F.R. Parts 730-774 <br> ) (Export Administration & Regulations) <br> ) <br> ) 18 U.S.C. § 2 <br> ) (Causing an Act to Be Done) <br> ) <br> ) 18 U.S.C. § 981(a)(1)(C) <br> ) 28 U.S.C. § 2461(c) <br> ) (Criminal Forfeiture) |
| v. | |
| ROBBINS & MYERS BELGIUM, S.A. | |
| Defendant. | |

**INFORMATION**

The United States Attorney charges that:

At all times material to this information:

**Introduction**

1.  Robbins & Myers, Inc. ("R&M"), was a publicly-held United States corporation with its principal place of business and headquarters located in Dayton, Ohio. R&M was a global manufacturer and supplier of equipment to firms in the energy recovery industry. R&M had numerous subsidiary companies located in eighteen countries around the world.

2.  Defendant Robbins & Myers Belgium, S.A. ("**RMB**"), an indirect wholly-owned subsidiary of R&M, was a Belgian corporation with its principal place of business in Chaineux, Belgium. Defendant **RMB** was in the business of exporting oil extraction equipment to companies located around the world. One of the key products sold by **RMB** to its customers was called a Stator, which is a component part of power sections used in oil and gas drilling. The

Stators shipped by **RMB** to Company A in Syria were made entirely from steel tube that had been milled in the United States. **RMB** purchased that steel tube from the overseas distributor for a U.S. company.

3. The United States Department of Commerce ("DOC"), located in the District of Columbia, was responsible for reviewing and controlling the export of certain goods and technologies from the United States to foreign countries and entities. The Export Administration Act, 50 U.S.C. App. §§ 2401-2420, authorized the DOC to prohibit or curtail the export of goods and technology from the United States as necessary to protect, among other things, the national security of the United States. The DOC implemented that authority through the Export Administration Regulations ("EAR"), 15 C.F.R. Parts 730-774. Although the EAA lapsed in 2001, at all times relevant to this Information the EAR continued to be in effect under the provisions of the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1706, by virtue of Executive Order 13222 (August 17, 2001), as extended by successive Presidential notices.

4. Section 5(a)(l) of the Syria Accountability and Lebanese Sovereignty Act of 2003 (Pub. L. 108-175, codified as a note to 22 U.S.C. § 2151) ("SAA"), required a prohibition on the export to Syria of all items on the DOC's Commerce Control List (15 C.F.R. Part 774) ("CCL"). The SAA also required that the President of the United States impose two or more of the six additional sanctions set forth in sections 5(a)(2)(A) through (F) of that statute.

5. On May 11, 2004, the President issued Executive Order No. 13338 which found that "the Government of Syria in supporting terrorism, continuing its occupation of Lebanon, pursuing weapons of mass destruction and missile programs, and undermining United States and international efforts with respect to the stabilization and reconstruction of Iraq constitute[d] an

unusual and extraordinary threat to the national security, foreign policy, and economy of the United States," and "declare[d] a national emergency to deal with that threat." One of the additional sanctions chosen by the President in Executive Order No. 13338, which implemented the SAA and was described in section 5(a)(2)(A), was a prohibition on the export to Syria of products of the United States, other than food and medicine.

6. In response to Executive Order 13338, the DOC issued General Order No.2 effective May 14, 2004, codified at Supplement 1 to 15 C.F.R. part 736 ("General Order No.2") and further codified at 15 C.F.R. § 746.9(a). Pursuant to 15 C.F.R. § 746.9(a), a license "was required for the export or reexport to Syria of all items subject to the EAR, except food and medicine classified as EAR 99 .... "

7. Section 734.2(b)(1) of the EAR defined "export" to mean, in pertinent part, an actual shipment or transmission of items subject to the EAR out of the United States. Section 734.2(b)(4) of the EAR defined "reexport" to mean, in pertinent part, the actual shipment or transmission of items subject to the EAR from one foreign country to another foreign country. Section 734.2(b )(6) of the EAR provided that, for purposes of the EAR, the export or reexport of items subject to the EAR that will transit through a country or countries, or be transshipped through a country or countries to a new country, or are intended for reexport to the new country, are deemed to be exports to the new country. Pursuant to 15 C.F.R. § 734.3, "all U.S. origin items wherever located" were "subject to the EAR."

8. Under Part 764 of the EAR:

   a. no person may cause or aid, abet, counsel, induce, procure, or permit the doing of any act prohibited, or the omission of any act required, by the

EAA, the EAR, or any order, license or authorization issued thereunder, 15 C.F.R. § 746.2(b);

b. no person may solicit or attempt a violation of the EAA, the EAR, or any order, license or authorization issued thereunder, 15 C.F.R.§ 746.2(c); and

c. no person may order, buy, remove, conceal, store, use, sell, loan, dispose of, transfer, transport, finance, forward, or otherwise service, in whole or in part, any item exported or to be exported from the United States, or that was otherwise subject to the EAR, with knowledge that a violation of the EAA, the EAR, or any order, license or authorization issued thereunder, has occurred, was about to occur, or was intended to occur in connection with the item. 15 C.F.R. § 764.2(e).

9. The conduct alleged in this Information began outside of the jurisdiction of any particular State or district, and later occurred within the District of Columbia and elsewhere, and is therefore within the venue of the United States District Court for the District of Columbia pursuant to 18 U.S.C. §§ 3237(a) and 3238.

10. Company A was one of the largest oil services firms in the world. Company A maintained operations in Syria. Defendant **RMB** supplied stators to Company A in Syria.

11. All Stators shipped by defendant **RMB** to Company A in Syria were a product of the United States subject to the EAR and fell within the jurisdiction of the DOC.

**COUNTS ONE THROUGH FOUR**

12. On or about the dates listed below, in the District of Columbia and elsewhere, defendant **RMB** willfully exported and reexported, and attempted to export and reexport, and caused to be exported and reexported, Stators to Company A in Syria, knowing the Stators were

destined for Syria, without having obtained an export license from the United States Department of Commerce located within the District of Columbia:

| COUNT | DATE OF SHIPMENT | QUANTITY | SALE PRICE |
|---|---|---|---|
| ONE | August 22, 2006 | 1 | $4,523.28 |
| TWO | September 11, 2006 | 2 | $11,406.72 |
| THREE | September 29, 2006 | 2 | $11,169.08 |
| FOUR | October 31, 2006 | 1 | $4,617.28 |

(**Unlawful Export or Attempted Export**, in violation of 50 U.S.C. §§ 1705(a) and (c); Executive Order No. 13338; 15 C.F.R. Part 746.9 and General Order No.2 to Supplement 1 of Part 736; **Causing an Act to be Done**, in violation of 18 U.S.C. § 2).

5

## **FORFEITURE ALLEGATION**

13. The violations alleged in Count One through Count Four of this Information are re-alleged and incorporated by reference herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Section 981(a)(l)(C), and Title 28, United States Code, Section 2461(c).

14. As a result of the offenses alleged in Count One through Count Four of this Information, defendant shall forfeit to the United States any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly, as the result of the offenses alleged in Count One through Count Four. The property to be forfeited includes, but is not limited to, the following:

Money Judgment

a sum of money of $31,716.36, which represents a sum of money equal to property constituting, or derived from, proceeds obtained, directly or indirectly, as the result of the offenses alleged in Count One through Count Three of this Information.

By virtue of the commission of the felony offenses charged in Count One through Count Four of this Information, any and all interest that defendant has in property constituting, or derived from, proceeds obtained directly or indirectly, as the result of such offenses is vested in the United States and hereby forfeited to the United States pursuant to Title 18, United States Code, Section 981(a)(l)(C), and Title 28, United States Code, Section 2461(c).

15. If, as a result of any act or omission of the defendant, the property identified above:

      a. cannot be located upon the exercise of due diligence;

      b. has been transferred or sold to, or deposited with, a third person;

      c. has been placed beyond the jurisdiction of the Court;

      d.    has been substantially diminished in value; or

      e.    has been commingled with other property that cannot be subdivided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b)(1), incorporating by reference Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the said defendant up to the value of said property listed above as being subject to forfeiture.

(**Criminal Forfeiture**, in violation of Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c)).

                                                      Respectfully submitted,

                                                      RONALD C. MACHEN JR.
                                                      UNITED STATES ATTORNEY

                                                      JOHN W. BORCHERT
                                                     Special Assistant United States Attorney
                                                       D.C. Bar No. 472824
                                                     National Security Section
                                                     555 Fourth Street, NW, (11th Floor)
                                                     Washington, D.C. 20530
                                                     (202) 252-7811
                                                     John.Borchert@usdoj.gov

September 16, 2014